# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| DAVID WILLIAMS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. SA-18-CV-219-XR |
| § | |
| WELLSHIRE FINANCIAL SERVICES, § | |
| LLC d/b/a LOANSTAR TITLE LOANS, § | |
| § | |
| *Defendant.* § | |

## ORDER

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court hereby GRANTS Defendant's Motion to Compel Arbitration and to Stay Proceedings. Docket no. 6.

## BACKGROUND

On February 22, 2018, Plaintiff David Williams filed his Original Petition in the 37th Judicial District Court of Bexar County, Texas. Docket no. 1-1. Plaintiff alleges that Defendant Wellshire Financial Services, LLC d/b/a Loanstar Title Loans ("Wellshire") breached a settlement agreement related to a debt that Plaintiff owed Defendant by refusing to accept Plaintiff's initial payment. *Id.* On March 5, 2018, Defendant removed this action to this Court, alleging that this Court has federal question jurisdiction over Plaintiff's Fair Debt Collections Practices Act ("FDCPA") claim and supplemental jurisdiction over Plaintiff's state law claims. Docket no. 1.

In January 2018, the parties allegedly entered into a settlement agreement, under which Plaintiff agreed to pay $625.00 for four months, with payments to begin in February 2018. Docket no. 1-1 at 3. Plaintiff alleges that Defendant agreed to a discharge of Plaintiff's payoff

1

debt of $6,327.73, which is secured by Plaintiff's vehicle. *Id.* Plaintiff alleges, however, that Defendant "refused to accept Plaintiff's initial payment under the guise of no settlement exists." *Id.* at 4. Defendant allegedly seeks to repossess Plaintiff's vehicle. *Id.* Plaintiff further alleges that, although he communicated to Defendant that he was represented by counsel with respect to the alleged debt, Defendant "continued to communicate and harass Plaintiff by repeatedly calling him and texting him about the alleged debt." *Id.*

Plaintiff brings claims for breach of contract, violation of the Texas Debt Collection Act ("TDCA"), violation of the FDCPA, and violation of the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* at 4–5. Plaintiff also seeks a declaratory judgment "specifying Plaintiff's and Defendant's rights and duties in connection with the vehicle and the alleged underlying debt." *Id.* at 4.

On April 4, 2018, Defendant filed a Motion to Compel Arbitration and to Stay Proceedings. Docket no. 6. According to Defendant, Plaintiff's debt stems from prior loan agreements between the parties, and Plaintiff's disputes are subject to a final and binding arbitration clause contained within the loan agreements. The Credit Services Agreement ("CSO") states: "Either you or we may elect to arbitrate a Claim by giving the other party written notice of the intent to arbitrate the Claim or by filing a motion to compel arbitration of the Claim." Docket no. 6-1 at 6. The CSO defines a "Claim" as:

> "any claim, dispute or controversy between you and us, whether preexisting, present or future, that in any way arises from or relates to the CSO Agreement, any prior agreements or loans you obtained from us, the events leading up to the CSO Agreement (for example, any disclosures, advertisements, promotions or oral or written statements made by us), or any product or service provided by us or third parties in connection with the CSO Agreement. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Agreement. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional

2

> torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief."

*Id.* Plaintiff does not dispute that he entered into arbitration agreements for his May 2017 and November 2017 loans, but he disputes that these arbitration clauses cover the settlement agreement that the parties later reached. Docket no. 7.

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). It is for the court, not the arbitrator, to decide whether the parties have agreed to arbitrate the disputes in question. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).

Determining whether to compel Plaintiff's claims to arbitration requires the application of a two-pronged test. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002). The first prong is aimed at determining whether the parties agreed to arbitrate the dispute in question. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). In particular, this prong involves two sub-inquiries: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the agreement covers the dispute in question. *Id*. The second prong requires a determination of "whether legal constraints external to the parties' agreement foreclosed the arbitration" of the relevant claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

## II. Application

First, the Court must determine whether the parties agreed to arbitrate the dispute over the alleged settlement agreement related to Plaintiff's remaining debt. As an initial matter, the parties agree that there is a valid agreement to arbitrate. Defendant states that Plaintiff signed a Loan Agreement, Promissory Note, and Security Agreement, and Plaintiff accepted "the obligation to submit all loan-related disputes to binding arbitration, rather than pursue them in court." Docket no. 6 at 5. Defendant states that, "after having conferred with opposing counsel, the Plaintiff admits that he was aware of his agreement to arbitrate." *Id.* Plaintiff signed the CSO that included the arbitration clause, and Plaintiff does not claim that he had no opportunity to read it. Under Texas law, an individual "who has the opportunity to read an arbitration agreement and signs it, knows its contents." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996). Defendant states that the parties' agreements "are amply supported by consideration" because the "provisions obligate both Williams and Wellshire to arbitrate all loan related disputes." Docket no. 6 at 5. Finally, Plaintiff "does not dispute that he entered into two arbitration agreements that covered the Loan Agreement, Promissory Note and Security Agreement(s) . . . in May 2017 and November 2017." Docket no. 7 at 1. Plaintiff acknowledges that "[b]oth Loan Agreements had their own individual arbitration agreement." *Id.* at 2. Thus, the Court finds a valid agreement to arbitrate exists between the parties.

Next, the Court must determine whether the arbitration agreements cover the dispute in question. Defendant argues that the arbitration clauses are broadly worded and capable of "expansive reach," such that the provisions cover all disputes related to the loans and loan agreements. Defendant argues that Plaintiff's claims related to the settlement agreement are well within the scope of the arbitration agreements. Plaintiff, on the other hand, argues that the

4

arbitration clauses are narrow in scope and only cover claims arising under the loan agreements, not the subsequent settlement agreement on which he bases his claims. Plaintiff argues there is no binding agreement to arbitrate the settlement agreement.

When determining if parties agreed to arbitrate a given dispute, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). In doing so, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)). If an arbitration clause is "broad," then "the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citing *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985)). If, however, the cause is narrow, "the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause." *Id.* at 755.

The Fifth Circuit has held that arbitration clauses containing the "any dispute" language are of the broad type. *Id.* In *Sedco*, the Fifth Circuit held that an arbitration clause that stated that "[a]ny dispute or difference between the parties arising out of this [agreement] shall, at the request of either party, be referred to three arbitrators . . . " was of the broad type. *Sedco*, 767 F.2d at 1145. The court noted that "when confronted with arbitration agreements, we presume that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (quoting *Commerce Park of DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 338

(5th Cir. 1984)). In *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.*, the court held that an arbitration clause that stated that "any controversy or claim, whether based in contract, tort or otherwise, arising out of, relating to or in connection with the Agreement" be referred to a three-step dispute resolution process that included arbitration was of the broad type. *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001); *see also Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393–94 (5th Cir. 2002) (finding a provision that mandated arbitration of "any and all claims . . . and other matters in question arising out of or relating to this Agreement . . . even though some or all of such Claims allegedly are extra-contractual in nature" was of the broad type and "not limited to claims that literally 'arise under the contract,' but rather embrace[d] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.").

The arbitration provision in this case is similar to those found by the Fifth Circuit to be of the broad type. The provision allows for arbitration of "any claim, dispute or controversy between you and us, whether preexisting, present or future, that in any way arises from or relates to the CSO Agreement, any prior agreements or loans you obtained from us, the events leading up to the CSO Agreement . . ., or any product or service provided by us or third parties in connection with the CSO Agreement." The arbitration provisions include the "relate to" language that demonstrates that these provisions are of the broad type.

Plaintiff points to other cases to argue that these provisions are of the narrow type and that his claims are not covered by the arbitration provisions. However, these cases are distinguishable from the present case. For example, in *Buell Door Co. v. Architectural Systems, Inc.*, the court focused on the fact that the arbitration clause included the language "any disputes

6

or questions *arising hereunder*" and did not include the language "relating to" to find that the arbitration clause was narrow in scope and did not apply to the dispute at issue. *Buell Door Co. v. Architectural Sys., Inc.*, No. 3:02-CV-721-AH, 2002 WL 1968223, at *6 (N.D. Tex. Aug. 20, 2002). Here, the provisions do not include the "hereunder" language, but they do include the "relate to" language. The other cases to which Plaintiff cited are similarly distinguishable. *See Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Texas*, No. CV H-17-2661, 2017 WL 5593523, at *9–11 (S.D. Tex. Nov. 17, 2017) (finding arbitration provision was of the narrow type because it stated the parties agreed to arbitrate "any Contract interpretation or claim issue" and did not include any "relate to" language); *Vetco Sales, Inc. v. Vinar*, No. CIV.A. 3:02-CV-1767, 2003 WL 21488629, at *3 (N.D. Tex. Apr. 23, 2003), *aff'd and remanded*, 98 F. App'x 264 (5th Cir. 2004) (finding arbitration provision was of the narrow type because it mandated arbitration of "[e]ach dispute, claim and controversy . . . *arising out of* this Agreement or breach thereof" and included no "relating to" language) (emphasis in original).

Although the arbitration provisions here include the "arising out of" language that courts often use to interpret an arbitration provision as narrow, the provisions here include additional language, specifically that any claim that "*relates to* the CSO Agreement" is subject to arbitration. As discussed above, courts consistently rely on "relates to" language to find an arbitration provision is of the broad type. Also, Plaintiff presents no evidence that the alleged settlement agreement was intended to terminate the previous contract, and thus, terminate the arbitration provisions. *See Duarte v. Mayamax Rehab. Services, L.L.P.*, 527 S.W.3d 249, 259 (Tex. App.—El Paso 2016, pet. denied) (finding terms of settlement agreement "unequivocally terminated the agreement to arbitrate"). Accordingly, the Court finds that the arbitration provisions here are of the broad type. The Court finds that Plaintiff's claims over the settlement

7

agreement have a significant relationship to the loan agreements, regardless of the label attached to Plaintiff's claims, because the dispute centers on Plaintiff's remaining debt and the repayment of that debt. Thus, the Court finds that the arbitration provisions cover Plaintiff's claims.

Finally, the Court finds that there are no legal constraints external to the parties' agreement that forecloses the arbitration of Plaintiff's claims. The FAA states that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA's coverage extends to loan transactions because they involve interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003). There are no legal restraints on the arbitration provisions included in the parties' agreements.

The FAA provides that when an issue in a lawsuit is referable to arbitration, a federal district court must, "on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, the Fifth Circuit has held that "when *all* of the issues raised in the district court must be submitted to arbitration," dismissal of the claim may be proper. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis added). In these situations, ordering a stay as opposed to a dismissal, would serve no purpose because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Id.* (quoting *Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986)).

Even in these circumstances, though, "dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice." *Glazer's, Inc. v. Mark Anthony Brands Inc.*, SA-11-CV-977-XR, 2012 WL 2376899, at *6 (W.D. Tex. June 22, 2012) (citing *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 331 n.9 (5th Cir. 2003)). Entry of a stay as opposed to a dismissal may be appropriate where "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed." *Apache Bohai Corp.*, 330 F.3d at 309.

Defendant states that dismissal of Plaintiff's claims is the appropriate remedy, but in the alternative, requests that all claims against Defendant be stayed pending the completion of arbitration. The Court will exercise its discretion to stay this action pending resolution of the arbitration.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to Stay Proceedings (Docket no. 6) is GRANTED. This case is ordered to arbitration and is STAYED pending resolution of the arbitration. Because all proceedings in this case are stayed pending resolution of the arbitration, this case is appropriate for administrative closure. *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay . . . ."); *see also CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250 (5th Cir. 2006).

The Clerk's office is DIRECTED to administratively close this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of this Court

and may be reopened upon request of any party or on the Court's own motion. *Mire*, 389 F.3d at 167. The parties are ordered to file quarterly status reports on the progress of the arbitration, beginning **June 17, 2018**.

It is so ORDERED.

SIGNED this 23rd day of May, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE